UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY BACON, *et al.*,

        Plaintiffs,

                                                Case No. 11-cv-14103
                                                Honorable Gershwin A. Drain

v.

EATON AEROQUIP, LLC,

        Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL RESPONSES TO DISCOVERY-INTERROGATORIES [#60]**

**I.  INTRODUCTION**

Plaintiffs filed the instant action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") claiming that Defendant, Eaton Aeroquip, LLC ("Eaton"), violated the FLSA by classifying Plaintiffs as exempt under the Act in order to deny Plaintiffs the statutory overtime wages required by the FLSA.  Defendants maintain that the overtime provisions of the FLSA do not apply to Plaintiffs because they were employed as Production Supervisors at Eaton's Jackson plant, therefore they were employed as "bona fide executives" under  § 213(a)(1) and exempt from the FLSA's overtime requirements.

Presently before the Court is Plaintiffs' Motion to Compel Responses to Discovery-Interrogatories, filed on December 7, 2012. This matter has been fully briefed and the Court finds that oral argument will not aid in the resolution of the parties' discovery dispute.  Thus, pursuant to E.D. Mich. L.R. 7.1(f)(2), this matter will be resolved on the briefs.

## II.    BACKGROUND

Plaintiff, Steve Hebb, submitted Interrogatories to Eaton, and Eaton sent its Answers to Hebb's Interrogatories on November 26, 2012. Plaintiffs maintain that Eaton's responses are inadequate. Specifically, Plaintiffs request that Eaton be compelled to provide full and complete answers to Interrogatory numbers 2 through 9.

In response, Eaton argues that Plaintiffs' Motion to Compel should be denied because Federal Rule of Civil Procedure 33(d) permits Eaton to direct Plaintiffs to the specific documents, testimony, and previous discovery responses identified in the Answers. In each Answer to the Interrogatories at issue, Eaton responded that "the answer to this Interrogatory may be determined by examining the Eaton Aeroquip business records produced in response to Plaintiffs' discovery requests, and that the burden of deriving or ascertaining the answer will be substantially the same for Plaintiffs and Defendant." *See* Plfs.' Mot., Ex. 1. Eaton's Answers also referred Plaintiffs to specific Bates numbers of relevant documents previously produced in response to Plaintiff Jeffrey Bacon's discovery requests, deposition testimony, and corresponding deposition exhibits. *Id.*

Eaton further maintains that the motion should be denied because Plaintiffs seek information that they already have. Eaton argues that Hebb's Interrogatories mirrored those made by Plaintiff Jeffrey Bacon's Interrogatories and Requests for Production. Eaton claims that Bacon's Interrogatories sought a detailed description of all of the Plaintiffs' job duties. On July 30, 2012, Eaton fully responded to those discovery requests in narrative form and through the production and identification of specific documents. Eaton also later provided the Jackson Plant Manufacturing Manager's and UAW President's declarations, which detail Plaintiffs' job duties at the Jackson plant.

### III.     LAW & ANALYSIS

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Federal Rule of Civil Procedure 26(b)(1) permits parties to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Rule 33(d) permits a party to answer an interrogatory by referring the party to the answering party's business records. Specifically, Rule 33(d) states:

> **(d)   Option to Produce Business Records.** If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding     party could; and
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d). Rule 33(d) is only available "where the answers to interrogatories may be found in the business records of the party upon whom the interrogatories have been served." *Calhoun v. Liberty Northwest Ins. Corp.*, 789 F. Supp. 1540, 1549-50 (W.D. Wash. 1992). "An interrogatory answer merely referencing documents is appropriate for requests requiring compilation or analysis, accomplished as easily by one party as another, or where neither side has clear superiority of knowledge or familiarity with the documents." *Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216, 226 (N.D. W. Va. 2007) (internal quotation omitted). However, "[i]t is inappropriate where the interrogatory calls for the exercise of particular knowledge and judgment on the part of the responding party." *Id.* "In that case, the served party must fully answer the interrogatory" because

the serving party is "entitled to know the factual content of the [served party]'s claims with a reasonable degree of precision." *Id.*

The FLSA requires employers to pay employees who work over forty hours per week "not less than one and one-half times the regular rate at which [the employees are] employed" for those overtime hours. *See* 29 U.S.C. § 207. However, the FLSA exempts from its minimum wage and maximum hour requirements those employees who work "in a bona fide executive capacity" as defined by Labor Department regulations. 29 U.S.C. § 213(a)(1). Administrative regulations classify employees as "executive" if (1) they are "[c]ompensated on a salary basis[,]" (2) their "primary duty is management of the enterprise . . . or of a customarily recognized department or subdivision thereof[,]" (3) they "customarily and regularly direct[] the work of two or more other employees[,]" and (4) they "ha[ve] the authority to hire or fire other employees or" if their "suggestions and recommendations" on personnel decisions "are given particular weight." 29 C.F.R. § 541.100(a)(1)-(4).

With these considerations in mind, the Court will examine Eaton's Answers to Hebb's Interrogatories Nos. 2 through 9.

Interrogatory No. 2

This interrogatory requests that Eaton, with respect to its defense of the "executive exemption," identify the relevant duties performed by Plaintiffs, specifically what Eaton "means by 'managing and monitoring production,' including what each Plaintiff did, with actual detail, to fulfill this duty." *See* Plfs.' Mot., Ex. 1 at 3. Eaton's response states, among other things, that this answer "may be determined by examining the Eaton Aeroquip business records produced in response to Plaintiffs' discovery requests, and that the burden of deriving or ascertaining the answer will be

substantially the same for Plaintiffs and Defendant." *Id*. Eaton identifies the following business records as being responsive to this interrogatory: Plaintiffs' respective performance evaluations, union grievance files, employee transfer slips, production tracking forms, the Jackson plant Collective Bargaining Agreement, as well as refers Hebb to Plaintiffs' deposition testimony and depositions exhibits. *Id*. at 3-4.

Interrogatory No. 3

This interrogatory requests that Eaton "describe what you mean by 'managing work schedules and transfers,' including what each Plaintiff did, with actual detail, to fulfill that duty." *Id*. at 4. Eaton refers Hebb to its Answer to Interrogatory No. 2, as well as probationary employee evaluations and Plaintiffs' deposition exhibits. *Id*.

Interrogatory No. 4

Here, Plaintiffs ask that Eaton "describe what you mean by 'planning and apportioning work among employees,' including what each Plaintiff did, with actual detail, to fulfill this duty." *Id.* at 5. Eaton responds by relying on its Answer to Interrogatory No. 2, as well as refers Hebb to Plaintiffs' deposition testimony and deposition exhibits. *Id.*

Interrogatory No. 5

Hebb requests that Eaton "describe what you mean by 'determining equipment to be used,' including what each Plaintiff did, with actual detail, to fulfill this duty." *Id*. at 6. Eaton responded by referring Hebb to its Answers to Interrogatory Nos. 3 and 4. *Id*.

Interrogatory No. 6

Here, Hebb asks Eaton to "describe what you mean by 'evaluating, training, and promoting of employees,' including what each Plaintiff did, with actual detail, to fulfill this duty." *Id.* Eaton

responded by referring Hebb to its Answers to Interrogatory No. 2, Plaintiffs' deposition exhibits, as well as its probationary employee evaluations. *Id*.

Interrogatory No. 7

This interrogatory states that "[i]f Defendant asserts that the executive exemption of the FLSA applies to Plaintiffs, please identify the exact department or subdivision of Defendant managed by each of the Plaintiffs." *Id*. at 7. Eaton responded by referring Hebb to its business records, specifically Plaintiffs' respective performance evaluations. *Id*.

Interrogatory No. 8

Here, Hebb requests a variety of information concerning Eaton's reliance on the executive exemption, specifically, Hebb sought:

- a. The identity of all employees who were hired, fired, promoted, or whose statuses were otherwise determined or affected by each such Plaintiff.
- b. For each employee identified above, the date that the hiring, firing, promotion, or other status change occurred, as the concept of the status change is described in any relevant CFR;
- c. For each employee identified above, the manner in which any Plaintiff hired, fired, promoted, or otherwise affected the status of the employee, as the concept of the "status change" is described in any relevant CFR;
- d. The identity of any documents or documentation which Defendant contends supports any of the above.

*Id*. at 8. Eaton responded by referring Hebb to Eaton's Answers to Interrogatory Nos. 2 through 7, as well as to Plaintiffs' deposition exhibits. *Id*.

Interrogatory No. 9

Here, Plaintiff Hebb asks, with respect to the time sheets produced by Eaton, whether Eaton "contend[s] that such time sheets reflect all hours worked by each Plaintiff for Defendant, and explain the basis for your contention." *Id*. at 9. Eaton responded that, "assuming 'time sheets' refers to the overtime rotation matrices . . . . Eaton Aeroquip states that they reflect the weekend rotation

schedules, rather than 'all hours worked by each Plaintiff for Defendant' or any other term defined in the Fair Labor Standards Act, any applicable state or federal regulations, or any controlling case law." *Id.*

Eaton argues that its Answers are appropriate because Rule 33(d) has been satisfied. Specifically, in responding to Hebb's Interrogatories, Eaton referred Plaintiffs to specific Bates numbers of relevant documents previously produced in response to Bacon's discovery requests, deposition testimony and corresponding deposition exhibits. Second, the information sought by Hebb's Interrogatories can be determined by examining Eaton's business records. For instance, Interrogatory No. 6 requests Eaton to describe what it means by "evaluating, training, and promoting of employees, including what each Plaintiff did, with actual detail, to fulfill this duty." In response, Eaton referred Plaintiffs to relevant documents outlining Plaintiffs evaluation, training and promotion of employees. One example is an employee evaluation completed by Hebb in 2008, wherein Hebb evaluated the job performance of a probationary employee.

Eaton also asserts that Plaintiffs' Motion to Compel should be denied because it seeks to compel information that Plaintiffs already have. Eaton provided documents and narrative responses that answered the questions posed by Hebb's Interrogatories. For example, in response to Bacon's Request for Production No. 2, which sought "copies of any documents . . . that refer to Plaintiffs or reference Plaintiffs' employment positions or performance of their duties, in any way[,]" Eaton provided a comprehensive response directly referencing, by organized category, documents specifically demonstrating Plaintiffs' relevant job duties.

> Eaton Aeroquip will produce job postings . . . performance evaluations [as well as] a sampling of documents evidencing supervisors' duties and performance at the Jackson plant, including documents relating to:

> (a) hiring, firing, promotion and discipline of employees at the Jackson Plant including evaluations of probationary employees, with recommendations for hire, continued hire, or job classification change . . . disciplinary write-ups, including sample disciplinary form instructions . . . letters to employee files . . . emails to human resources . . . and other measures taken in response to hourly employee actions, as well as correlated documents relating to the termination of hourly employees supervised by Plaintiffs.
>
> (b) training and/or qualification of employees for certain jobs (which in many cases results a change in employment status/qualification) including inspection stamp training records from 2008, 2010, and 2011 . . . 10-day qualification maintenance temporary transfers signed off by Plaintiffs . . . sign-in sheets for health and safety training conducted by supervisors . . . lists and schedules evidencing supervisors' role in conducting training in safety, diversity, ethics, and values, and supervisor performance scores for training conducted, . . . supervisors approving employee requests for additional task training within current classification, and an email evidencing a supervisor transfer of an employee from classification to another.
>
> (c) overseeing, measuring, and enforcing productivity within their division including sample production reports completed by Plaintiff supervisors to track employee productivity, output, and hours;
>
> (d) adjusting rates of pay and hours of work including sample overtime schedules filled out by Plaintiffs, and documents related to the scheduling and overseeing of overtime and weekend shifts . . . and
>
> (e) grievances issued against Jeff Bacon as a result of actions taken to manage his direct reports issued between July 2010 and May 2011[.]

*See* Eaton's Resp. at 13. Moreover, Eaton provided Plaintiffs with their performance evaluations, which describe Plaintiffs' personal knowledge about the supervisory duties they carried out, such as disciplining employees, making decisions affecting rates of pay, utilizing production reports, and carrying out a variety of other responsibilities on behalf of the company. Lastly, Eaton provided declarations by personnel who have personal knowledge of Plaintiffs' job duties, day-to-day managerial activities, and hire/fire authority. For instance, Richard C. Vigus, Manufacturing Manufacturer at the Jackson plant, provided the following information in his declaration:

4.  I currently serve as the Manufacturing Manager for the Jackson Plant. I am responsible for the management of plant's 10 salaried Production Supervisors who in turn are responsible for managing 219 hourly unionized manufacturing employees who fabricate, assemble, and test hydraulic tube, coupling, and hose assemblies for both commercial and defense aerospace vehicles.

    \*   \*   \*

8.  Each Production Supervisor typically directs the work of between 20-30 hourly employees and is responsible for managing a specific manufacturing department or departments within the Jackson Plant (i.e., Bend, Joining, Standard Hose, Complex Hose, Standard Coupling and Specialty Coupling). Each department is a permanent unit within the Jackson Plant and serves a specific continuing function[.]

9.  Production Supervisors are responsible for every aspect of the manufacturing process in their departments. They are responsible for tracking and trending key operational metrics and taking action to improve performance in these metrics, including . . . on-time delivery and on-time completion of work orders, quality through scrap and first time yield data[.]

    \*   \*   \*

18. Production Supervisors are responsible for evaluating the performance of all probationary employees, i.e. new employees. Per the CBA, new hourly employees are in a probationary status for their first 90 days. During this time, the Production Supervisor that probationary employees work for is responsible for evaluating their training progress, skill set, and overall job performance and making a recommendation on whether or not their employment should be continued beyond the probationary period. Since the Production Supervisor has the most first-hand contact with the probationary employee, his or her evaluation and recommendation are relied upon extensively (and often exclusively) by the company to determine whether a probationary employee is hired or fired.

19. Production Supervisors are an integral part of the hiring process for new hourly employees. After Human Resources screens applicants for the minimum requirements, the Production Supervisors rank the remaining applicants based on their resumes and the top ranked applicants are brought in for on-site interviews. Production Supervisors are part of the on-site interview team along with HR, and their input is essential to the process of consensus on whether or not to make an offer to a job candidate.

*See* Dkt. 19-9, Dec. of Richard Vigus. Further, the declaration of Donald Huffman, the Union

President, indicated, among other things, that: "Supervisors have the authority to discipline employees, including issuing a suspension without pay and even discharging employees" and "direct all aspects of the work of employees, allocate the work in their departments/areas . . . transfer employees . . . and set the overtime schedules on a weekly and daily basis." *See* Dkt. No. 19-7, Dec. of Donald Huffman.

Plaintiffs reply that Hebb's Interrogatories seek to explore Eaton's contentions regarding the elements of the executive exemption, specifically requesting that Eaton provide examples and acts to support its assertions that Plaintiffs performed the duties necessary to properly classify them under the executive exemption. As an example, Plaintiffs refer the Court to Eaton's Answer to Interrogatory No. 8. arguing that reliance on Plaintiffs' disciplinary forms, emails and grievances cannot answer this Interrogatory. Plaintiff complains that none of these documents definitively state that any Plaintiff hired, fired, promoted or changed the status of anyone or made a suggestion that led to the hiring, firing, promotion or change in status. Plaintiffs assert that Rule 33(d) is inapplicable here because the business documents relied upon by Eaton do not directly answer the questions posed by Hebb's Interrogatories. Further, Plaintiffs argue that they dispute the meaning and significance of the discovery documents as they relate to Plaintiffs' specific job duties under the FLSA, including Plaintiffs' authority and influence over hiring, firing and change of status. Lastly, Plaintiffs maintain that contrary to Eaton's assertions, they do not currently have this information in their possession; Plaintiffs seek Eaton's specific, corporate recollection about the actual job duties that Plaintiffs' performed, not the existence of documents.

As an initial matter, Eaton cannot rely on Plaintiffs' deposition testimony since their testimony is not a business record. Further, while the declarations of Vigus and Huffman shed some

light on the bases Eaton relies on in support of its executive exemption defense, these are likewise not business records. Even if Eaton could rely on the declarations, these documents do not identify what each Plaintiff did relative to their duties of evaluating and training or in what department each Plaintiff had supervisory responsibility over. Nor do the declarations identify all the employees who were "hired, fired, promoted, or whose statuses" were affected by each Plaintiff.

However, Eaton's actual business records do adequately answer some of Hebb's Interrogatories. The Court finds that Plaintiffs' respective performance evaluations, union grievance files, employee transfer slips, production tracking forms, the Jackson plant Collective Bargaining Agreement, and probationary employee evaluations adequately answers Hebb's inquiry as to Interrogatories No. 2 through 6. The facts requested can be gleaned from these business records. Therefore, the Court denies Plaintiffs' Motion to Compel with respect to these Interrogatories. Further, the Court denies Plaintiffs' request to compel relative to Interrogatory No. 9 as the Court's review of Eaton's Answer reveals that Eaton did not rely on Rule 33(d) in answering this interrogatory, and adequately responded to it. Further, Plaintiffs raise no specific objection to this Answer in their reply brief.

As to Interrogatory Nos. 7 and 8, the Court finds that Eaton has not adequately answered these Interrogatories by referring Plaintiffs to its business records. The business records do not identify all employees who were hired, fired, promoted, or whose statuses were otherwise determined or affected by each such Plaintiff, nor the other information sought by the Interrogatory. Nor do the business records identify each subdivision or department managed by Plaintiffs. These questions focus on Eaton's affirmative defense and Plaintiffs are entitled to this information in order to prepare their case. Plaintiffs are entitled to know the factual content supporting Eaton's defense

"with a reasonable degree of precision." *Ayers v. Cont'l Cas. Co.*, 240 F.R.D. at 226. Thus, Plaintiffs' Motion to Compel is granted with respect to Interrogatory Nos. 7 and 8.

## IV. CONCLUSION

Accordingly, Plaintiffs' Motion to Compel Responses to Discovery-Interrogatories [#60] is GRANTED IN PART and DENIED IN PART. Eaton shall adequately answer Hebb's Interrogatory Nos. 7 and 8 no later than February 27, 2013.

SO ORDERED.


Dated: February 12, 2013                    /s/Gershwin A Drain
                                             GERSHWIN A. DRAIN
                                             United States District Judge