UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY BACON, *et al.*,

        Plaintiffs,

v.                                  Case No. 11-cv-14103
                                  Hon. Gershwin A. Drain


EATON AEROQUIP, LLC,

        Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT [#73],  DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AS MOOT [#72] AND DISMISSING ACTION**

## I. INTRODUCTION

On September 20, 2011, Plaintiff Jeffrey Bacon, filed the instant action for overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") against Defendant, Eaton Aeroquip, LLC.  Thereafter, Plaintiff submitted and/or filed at least seven versions of the complaint adding Plaintiffs Steve Hebb, Norm Haygood, Dennis Wilson, Derek Kyro, Amro Saadeldin, and Timothy Baynes and deleting a Defendant.[1]  On October 2, 2012, this matter was reassigned to the undersigned pursuant to Administrative Order 12-AO-012 and on November 2, 2012, this Court entered an Order granting Plaintiffs' Motion for leave to file the Fourth Amended Complaint in order to add Michelle Dixon as a plaintiff.  In their Fourth Amended Complaint,

---

[1] Plaintiff originally incorrectly named Eaton Corporation, however in their Second Amended Complaint they substituted Eaton Aeroquip LLC for Eaton Corporation.  *See* Dkt. No. 24.

Plaintiffs allege that Defendant improperly classified them as exempt under the FLSA's bona fide executive exemption because Plaintiffs had no authority to hire, discipline or fire employees or otherwise influence personnel decisions. Plaintiffs seek to recover their lost overtime compensation, as well as liquidated damages for Defendant's willful violation of the FLSA. Defendant counters that Plaintiffs were employed in an executive capacity and therefore exempt under the overtime provisions of the FLSA.

Presently before the Court is Defendant's Motion for Summary Judgment, filed on January 7, 2013. Also before the Court is Plaintiffs' Motion for Partial Summary Judgment Regarding the Fluctuating Workweek Method of Calculating Damages and Statutory Limitations Period, filed on January 4, 2013. These matters are fully briefed and a hearing was held on April 5, 2013. For the reasons that follow, the Court finds that Plaintiffs cannot show a genuine issue of material fact exists as to their FLSA claims because they were employed in a bona-fide executive capacity, therefore their positions are exempt from the FLSA's overtime provisions and Defendant is entitled to judgment as a matter of law.

## II.    FACTUAL BACKGROUND

Plaintiffs are former front-line supervisors at Defendant's aerospace manufacturing plant located in Jackson, Michigan. Bacon, Hebb, Saadeldin, and Baynes were Production Supervisors. Wilson, Kyro, Haygood, and Dixon were Logistics Supervisors. The plant manufactures critical components for military and commercial aircraft. The plant is unionized and subject to a collective bargaining agreement (" CBA").

At the time this action was filed in September of 2011, the plant employed more than five hundred people and fifteen supervisors, who earned approximately $55,000.00 to $75,000.00

annually. Production supervisors directed the work of between twenty to thirty employees and were responsible for managing particular departments such as the Bend, Joining, Standard, Complex Hose and Specialty Coupling departments. Each manufacturing department is a permanent unit within the plant that has a specific and continuing function. Logistics supervisors directed the work of twenty to forty employees and were responsible for managing specific departments to ensure the supply of materials necessary to manufacture and ship the aircraft parts.

## III.   LAW & ANALYSIS

### A.   Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B.    Bona Fide Executive Exemption Under the FLSA

The FLSA  generally requires a covered employer to pay employees at least one-and-one-half times their regular wage rate for hours the employees work in excess of forty hours in a given work week.  29 U.S.C. § 207(a)(1).  The FLSA exempts from this requirement, "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

The Department of Labor has established a four-part test to determine whether an employee is properly classified under the executive exemption.  *See* 29 C.F.R. § 541.100(a)(1)-(4).  Specifically, the regulations state that the term employee in a "bona fide executive capacity" means

-4-

any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging, or other facilities;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R.  § 541.100(a)(1)-(4).  Under the regulations, "management" includes, but is not limited

to:

> [A]ctivities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; ... providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

As an initial matter, Plaintiffs concede that their positions as production and logistics supervisors satisfy the first three prongs of the bona fide executive exemption.  Plaintiffs were compensated at a rate not less than $455.00 per week, earning approximately $55,000.00 to $75,000.00 annually.  Additionally, Plaintiffs managed the Bend, Joining, Standard, Complex Hose and Specialty Coupling departments, which employed twenty to thirty employees a piece.

Further, as Supervisors at the plant, they "managed" these departments.  Plaintiffs spent 100% of their work time dedicated to supervising the nonexempt employees in their respective

departments, in fact, pursuant to the CBA, Plaintiffs could not perform regularly scheduled work. Plaintiffs monitored and ensured compliance with Defendant's policies and procedures, which "constitutes the very essence of supervisory work." *Donovan v. Burger King Corp*., 672 F.2d 221, 226 (1st Cir. 1982); *see also Beauchamp v. Flex-N-Gate LLC*, 357 F.Supp. 2d 1010 (E.D. Mich. 2005) (finding production supervisor position qualified for executive exemption where job functions included, among other duties, training workers to perform tasks in accordance with corporate policies and procedures). *See* Kyro Dep. Tr. at 150: 17-19; Dixon Dep. Tr. at 200:4-8; Haygood Dep. Tr. 108:22-25; Hebb Ex. F2 ("I hold my employees accountable not only for production, but to abide by company policies and procedures.")

Supervisors were also responsible for tracking and reporting information and taking action to improve performance, including safety incidents and risk scores, on-time delivery and on-time completion of work orders, quality through scrap and first time yield data, and productivity through pieces per hour or "units per operator day." *See* Baynes Dep. Tr. at 69:10-11, 22-23. Supervisors were tasked with assessing employee training needs, setting and coordinating training plans, conducting training and functional testing. *See* Dixon Ex. F5; Bacon Dep. Tr. at 56:17-19; Wilson Dep. Tr. at 59:8-60-24.; Kyro Dep. Tr. at 145:24-146:2; Haygood Ex. F1; Baynes Dep. Tr. at 37:24-38:7; and Hebb Dep. Tr. at 146:14-22.

Additionally, and fatal to Plaintiffs' claim, the record demonstrates that Plaintiffs' suggestions and recommendations as to the hiring, firing, advancement, or change of status of employees were given particular weight by upper management. Plaintiffs provided recommendations concerning whether probationary employees should be retained, whether employees were qualified to advance, and whether to initiate disciplinary action.

-6-

For example, after Human Resources performed initial screening of applicants, the supervisors ranked the remaining applicants based on their resumes and the top ranked applicants were brought in for interviews.  *See* Willson Ex.  B1; Hebb Ex.  B4; Baynes Ex.  B4.  Further, under the CBA, new hourly employees are in a probationary status for their first ninety days of employment.  During this period, supervisors are responsible for evaluating the training process, skill set, and overall job performance and making a recommendation on whether to retain an employee.  *See* Bacon Ex.  B9; Hebb Ex.  B2; Wilson Ex. B2; Saadeldin Ex.  B1; Baynes Ex.  B1; and Dixon Ex.  B2.  Defendant relies extensively, and often exclusively, upon these evaluations in determining whether to hire a probationary employee.  *See* Vigus Dec.  at ¶ 20.

Supervisors are also responsible for and authorized to determine when an employee has satisfactorily completed training and to request that an employee be "qualified" by the Quality Department at the plant as a skilled operator in their job classification under the CBA, impacting eligibility for future positions and pay within the plant.  *See* Vigus.  Dec.  at ¶ 15; Huffman Dec. at ¶ 9.  Supervisors also make up two of five positions on a Candidate Selection Committee established under the CBA to choose, train and qualify employees to fill non-seniority skilled positions.  *See* Vigus Dec.  at ¶ 16; Huffman Dec.  at ¶ 10.  Two reports of unsatisfactory work from a supervisor responsible for the trainee results in a complete bar to the trainee obtaining the skilled position.  *Id.*

Supervisors also perform disciplinary duties such as one on one sessions with the employee to discuss expectations, written discipline, including disciplinary layoff without pay and in extreme cases, the recommendation to terminate employment.  *See* Kyro Ex.  D1; Dixon Dep.  Tr. at 72:14-16; Hebb Ex.  D1, D6; Saadelin Ex.  D7.  Supervisors also had the discretionary authority to

determine whether the formal disciplinary process should be initiated.  Baynes Dep.  Tr.  at 61:5-9,

Kyro Dep.  Tr.  at 138:21-23; and Dixon Dep.  Tr.  196:7-10, 13-14.   A supervisor's documentation

is important in the event the Union decides to file a grievance to protest the disciplinary action.  *See*

Bacon Ex.  E4; Hebb Ex.  E3; Saadeldin Ex.  E2; and Baynes Ex.  E1.  In fact, Plaintiffs discussed

their use of discipline in their annual reviews.  *See* Bacon Ex.  F1 ("[O]ver the past several months,

a problem employee faced legitimate disciplinary action from me on two occasions."); Hebb Ex.

F3 ("I have learned how to motivate certain individuals and have assessed discipline to address

performance issues."); Dixon Ex.  F3 ("Also being in a supervisory role, I've had to set boundaries

and expectations.  This tool that is provided to us as supervisors for a union environment are

[disciplinary] write ups.").

Further, supervisors were tasked with making manpower assignments, including establishing

the proper level of staffing for production, deploying existing employees to best meet production

demands, transferring employees in or out of departments, setting the labor plan for both regular and

overtime hours, and managing the labor budget for their departments.  *See* Dec.  of Richard Vigus,

¶11. For example, Saadelin testified that he made assignment decisions based on the employees who

were present and the work that needed to be done:

> If I have a bender who's not present today or have a vacation day and I need to have
> somebody work on the machine, I'll transfer [an] employee . . . . So whether I have
> John work on this [machine] or this one, I can move people within the machines
> based on the jobs that I have.

Wilson, Bacon, Haygood and Kyro all testified similarly concerning their ability to move employees

to other jobs to accommodate work needs.   Additionally, Plaintiffs had the ability to move a

qualified employee to a different job classification pursuant to the terms of the CBA.  Such transfers

had the ability to affect pay.  The CBA provides that an "employee who is transferred temporarily

-8-

from his current job to a job in another classification at the Company's request shall be paid his current rate or the rate of the job, whichever is greater." Supervisors also set the overtime schedules on a daily and weekly basis for the employees in their departments. *See* Wilson Dep. Tr. at 99:13-16; Hebb Ex. F-2; Kyro Ex. F1; Haygood Ex. F1; and Dixon Dep. Tr. at 104:5.

Thus, based on Plaintiffs' duties as supervisors at the plant, their classification as exempt under the bona-fide executive exemption is proper. Directly on point with this matter is the case of *Beauchamp*, *supra*, where this Court concluded that a production supervisor at an automobile assembly plant was properly employed in a bona fide executive capacity and therefore not entitled to overtime compensation under the FLSA. *Beauchamp*, 357 F. Supp. 2d at 1018. In *Beauchamp*, the plaintiff, similar to the Plaintiffs in the instant matter, made recommendations to the company regarding whether temporary workers should be kept on as permanent status workers. *Id.* at 1016.

Also like the Plaintiffs here, the *Beauchamp* plaintiff "initiated the progressive disciplinary process set forth in the collective bargaining agreement that would lead to an hourly worker's discharge." *Id.* Further, the *Beauchamp* court rejected the plaintiff's argument, similar to Plaintiffs' assertion here, that plaintiff's authority was limited by plant procedure and the terms of the CBA, finding that such limits did not alter the "essential 'managerial' nature of the duties actually performed." *Id.* at 1017-18. "[A]n employee's suggestions . . . have particular weight even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision." *Id.* at 1018 (citing 29 C.F.R. § 541.105).

Plaintiffs are incorrect in suggesting that *Beauchamp* provides a "broad view" of "what it means to provide suggestions and recommendations as to firing." *See* Plfs.' Br. at 20. In fact, the analysis in *Beauchamp* has been cited repeatedly as the correct standard for evaluating this prong

-9-

of the test. *See Rainey v. McWane, Inc.* 552 F. Supp. 2d 626, 632 (E.D. Tex. 2008)("[T]he Court agrees with the Michigan Court and holds that Plaintiffs' suggestions and recommendations as to whether an employee would become permanent, transfer departments, and receive discipline satisfies the fourth element . . . ."); *Burson v. Viking Forge Corp.*, 661 F. Supp. 2d 794, 805 (N.D. Ohio 2009) (finding that "Defendant's hiring and disciplinary processes are similar to those in *Beauchamp*"); *Scott v. SSP Am., Inc.*, No. 09-cv-4399, 2011 WL 1204406, *15 (E.D.N.Y. Mar. 29, 2011) ("Plaintiff's authority to recommend suspensions and to initiate disciplinary process against the unionized, hourly employees is sufficient to show that her recommendations and suggestions as to changes in employment status and firing were given particular weight.").

Moreover, the cases relying on *Beauchamp* have similarly rejected the argument presented here that a supervisor must have unfettered discretion to qualify for the executive exemption under the FLSA. *See Aguirre v. SBC Commc'ns, Inc.*, No. H-05-3198, 2007 WL 2900577 (S.D. Tex. Sept. 30, 2007) ("nothing in the governing regulations or relevant case law requires that a supervisor have unfettered discretion in the performance of his management duties in order to be deemed an "executive."); *Ramos v. Baldor Specialty Foods, Inc.* No. 10-6217, 2011 U.S. Dist. LEXIS 66631, *17-18 n. 5 (S.D.N.Y. June 16, 2011) ("The executive exemption does not demand complete freedom from supervision, such that Plaintiffs are answerable to no one; as this would disqualify all but the chief executive officer from satisfying the exemption.")(quotations omitted).

The cases relied on by Plaintiffs in support of their contention that they had no authority nor significant influence over personnel decisions are distinguishable from the circumstances present here. In *Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 555 (3d Cir. 2006), crew leaders for a chicken processing company were responsible for picking up seven to eight crew members at their

-10-

homes and transporting them to the farms where the chickens were harvested and transporting them

back home at the end of the day. *Id.* at 555. Unlike Plaintiffs' supervisory duties, the crew leaders'

duties did not "include recruiting, hiring and firing of crew members." *Id.* at 558. Additionally, the

record contained consistent testimony from the leaders that "they had no responsibility for recruiting

catchers, no responsibility for making recommendations on the hiring or termination of individuals,

and no power to hire or fire an employee, even within restricted guidelines. Rather, they had the

limited power to borrow an employee from another crew when necessary . . . ." *Id.* at 558-59.

The case of *Petersen v. Cleveland Inst. of Art.*, No. 08-cv-1217, 2011 U.S. Dist. LEXIS

41578 (N.D. Ohio April 18, 2011) involved an FLSA claim by a technical assistant who worked

in the computer labs at the art institute. *Petersen*, 2011 U.S. Dist. LEXIS 41758, at *7-8. He was

tasked with keeping track of how many hours the work-study students worked in the lab and would

assign some tasks to the students related to maintaining the lab. *Petersen*, 2011 U.S. Dist. LEXIS

41758, at *8-9. His primary job duties involved addressing and resolving concerns within the

computer labs, and recommending changes in procedure so that the labs could run more efficiently.

*Petersen*, 2011 U.S. Dist. LEXIS 41758, at *24-25. Based on these job duties, the *Petersen* court

found that a question of fact existed as to whether the plaintiff's position was managerial in nature.

*Id.* The court further opined that "the job responsibilities that may arguably be considered

executive do not make Plaintiff fall within the executive exemption because Plaintiff was directed

by supervisors to undertake managerial tasks." *Id.*

Unlike the plaintiffs in *Davis* and *Petersen*, the record demonstrates that Defendant relied

upon Plaintiffs to carry out employee and manpower determinations at the plant, including, but not

limited to, Plaintiffs suggestions to interview candidates, to hire or dismiss probationary employees,

to discipline hourly employees, to transfer employees and set the labor plan for both regular and overtime hours.

Additionally, Plaintiffs have failed to come forward with any admissible evidence which establishes a genuine issue of material fact exists as to the fourth prong of the executive exemption test. As an initial matter, Plaintiffs testified that they have no knowledge of what management considered or relied upon in making personnel decisions. *See* Baynes Dep. Tr. at 83:9-18; Bacon Dep. Tr. at 77:17-24; Dixon Dep. Tr. at 129:13-18, 137:20-138:5, 224:11-24, 229:3-10; Saadeldin Dep. Tr. at 89:22-90:2; and Wilson Dep. Tr. at 65:6-10, 69:16-22. Statements that are not based on personal knowledge cannot be relied upon in opposing a motion for summary judgment. *See Courtney v. Murphy*, No. 10-cv-14123, 2012 WL 3966336, *3 n. 2 (E.D. Mich. Sept. 11, 2012) (finding such assertions to be "ultimately inadmissable at trial as lacking in foundation and therefore, insufficient to defeat summary judgment."); *see also Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 667 (6th Cir. 2005). Therefore, the Court cannot rely on Plaintiffs' declarations to the extent they contain statements claiming that Plaintiffs' recommendations were ignored or never considered by upper management.

Further, Plaintiffs' declarations attempt to create a genuine issue of fact, however they contradict Plaintiffs' deposition testimony. *See Penny v. United Parcel Post*, 128 F.3d 408, 415 (6th Cir. 1997) ("We do not consider this [declaration] however, because a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony.") Moreover, Plaintiffs' statements are contradicted by the very documents they rely on in their declarations. For instance, Hebb denied that he had any role in setting overtime hours, however Hebb was evaluated on his compliance with

-12-

meeting overtime requirements, evidenced by his yearly evaluations, one of which consists of Hebb's discussion of his performance with respect to managing overtime. Other record evidence similarly demonstrates that managing overtime requirements was part of the Plaintiffs' job responsibilities. *See* Bacon Ex. F3; Baynes Ex. at F1; Dixon Ex. F3 and Haygood Ex. F1. Finally, the declarations cannot create a question of material fact because they consist largely of inadmissible hearsay, improperly rely on conclusions of law, as well as contain statements that are irrelevant to the fourth-prong analysis. *See* e.g., Bacon Dec., ¶ 30 (claiming Plaintiffs were not allowed to interview candidates and were not trained on conducting interviews).

For the reasons articulated above, Plaintiffs have not demonstrated they were improperly classified under the executive exemption, therefore Plaintiffs cannot show that they are entitled to overtime compensation nor that Defendant violated the FLSA's record keeping requirement. *See* 29 U.S.C. § 211(c). The Court declines to address Defendant's alternative arguments in support of summary judgment. Further, the Court need not rule on Plaintiffs' Motion for Partial Summary which seeks a ruling in their favor on the applicability of the fluctuating workweek method of calculating damages and the applicability of the three-year statute of limitations. Because the Court concludes that Plaintiffs were properly classified as "exempt" under the FLSA, their motion is moot.

## IV.    CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment [#73] is GRANTED.

Plaintiffs' Motion for Partial Summary Judgment [#72] is DENIED AS MOOT.

This cause of action is dismissed.

SO ORDERED.

Dated: May 30, 2013                                      s/ Gershwin A Drain
                                                        GERSHWIN A. DRAIN
                                                        United States District Judge