## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Jeffrey Bacon, *et al*.,

       Plaintiffs,

       v.

Eaton Aeroquip, LLC

       Defendant.

Case No.:  4:11-cv-14103-GAD-MJH

Judge Gershwin A. Drain

Mag. Judge Michael J. Hluchaniuk

### DECLARATION OF NICHOLAS T. VINCENT

Pursuant to 28 U.S.C. § 1746, I, Nicholas T. Vincent, state as follows:

1.     I have personal knowledge of and am competent to testify to all facts in this Declaration.

2.     I am a Vice President of Human Resources and, at the time the captioned lawsuit was filed in 2011, supervised human resource functions and employees for a number of Eaton Aeroquip LLC's ("Eaton Aeroquip") manufacturing facilities, including the plant located in Jackson, Michigan (the "Jackson Plant").

3.     The Jackson Plant manufactures critical components for military and commercial aerospace platforms.

4.     At the time the caption lawsuit was filed, the Jackson Plant employed over five hundred people.  Approximately fifteen were employed as production and logistics supervisors directly managing the hourly union workforce ("Supervisors").

5.     I have access to the Jackson Plant business and employment records kept in the regular course of business, including records evidencing the compensation and classification of Supervisors under the Fair Labor Standards Act ("FLSA").

6.     Supervisors at the Jackson Plant were and are classified as exempt from overtime requirement under the FLSA.  At the time the captioned lawsuit was filed in 2011, Supervisors earned approximately $55,000 to $75,000 annually.

7.     The Jackson Plant is a unionized plant subject to the Jackson Plant Collective Bargaining Agreement ("CBA") with Local Union Number 475 of the United Automobile, Aerospace, and Agricultural Implement Workers of America.

8.      When I was a member of Jackson Plant management, I was governed by and my discretion was limited by the terms of the CBA, as well as the Jackson Plant Attendance Policy, the General Plant Rules, and the Safety Rules (collectively, the "Jackson Plant Rules"). Similarly, human resources employees at the Jackson Plant are governed by and required to follow the terms of the CBA and the Jackson Plant Rules.

9.      Supervisors at the Jackson Plant were also expected to follow the terms of the CBA and Jackson Plant Rules. Supervisors played an essential role in the progressive disciple at the Jackson Plant, had the responsibility and authority to discipline the employees they supervised, and were expected to exercise their authority to enforce the terms of the CBA and the Jackson Plant Rules. Although the Jackson Plant human resources employees were also involved in the disciplinary process, the process relied upon Supervisors to notice, address, and report violations of the CBA and the Jackson Plant Rules. Depending upon the seriousness of the violation and the number of previously reported disciplinary infractions, this process could and did result in the termination of union employees at the Jackson Plant.

10.     Based on my review of employment records and discussions with human resource personnel at the Jackson Plant, the Plaintiffs were employed at the Jackson Plant as follows:

a.      Jeffrey Bacon was employed by Eaton Aeroquip as a production supervisor at the Jackson Plant from August 1, 2005 until July 23, 2011.

b.      Steven Hebb was employed by Eaton Aeroquip as a production supervisor at the Jackson Plant from January 1, 2005 until November 21, 2011.

c.      Dennis Wilson was employed by Eaton Aeroquip as a logistics supervisor at the Jackson Plant from June 16, 2006 until October 1, 2011.

d.      Amro Saadeldin was employed by Eaton Aeroquip as a production supervisor at the Jackson Plant from September 16, 2008 until September 18, 2012, but was on disability leave unrelated to his employment and not working from February 16, 2009 through April 16, 2009 (three months) and again from February 21, 2011 through the end of his employment with Eaton Aeroquip (one year and seven months).

e.      Derek Kyro was employed by Eaton Aeroquip as a logistics supervisor at the Jackson Plant from April 16, 2009 until May 15, 2010.

f.      Norman Haygood was employed by Eaton Aeroquip as a logistics supervisor at the Jackson Plant from June 1, 2009 until June 11, 2011.

g.      Timothy Baynes was employed by Eaton Aeroquip as a production supervisor at the Jackson Plant from May 1, 2005 until May 5, 2012.

h.      Michelle Dixon was employed by Eaton Aeroquip as a production supervisor at the Jackson Plant from February 16, 2008 until December 31, 2009.

11.     Due to economic conditions, from November 19, 2008 through February 27, 2011, no new hourly union employees were hired at the Jackson Plant.

12.     In the months after Jackson Plant management raised concerns about his job performance in 2010, Mr. Bacon raised a number of employment concerns, including the FLSA claims that are the subject of this action.

13.     Analyzing and responding to Mr. Bacon's claims occupied a great deal of my time and the time of the Jackson Plant human resources manager, Gretchen Bridgland.

14.     Following Mr. Bacon's complaints about the classification of Supervisors at the Jackson Plant, I undertook an investigation of those claims.  Mr. Bacon also raised his concerns with Eaton's confidential ethics and ombuds departments, both of which were established to provide employees with a way to have their concerns heard and acted upon, if warranted.

15.     Although at the time I had responsibility for many manufacturing facilities, I personally undertook an investigation of Mr. Bacon's complaints.  As appropriate throughout my investigation, I consulted Mr. Bacon's supervisor, the plant manager, other human resources professionals, ethics and ombuds employees, and corporate counsel.  Management at the Jackson Plant, as well as at corporate headquarters, took Mr. Bacon's concerns and its obligations under the FLSA very seriously.

16.     As part of the investigation, I consulted an FLSA exemption test questionnaire available from the Society for Human Resource Management.  A true and correct copy of the questionnaire I used is attached as Exhibit 1.  I applied the factors identified under the executive employee exemption on the questionnaire to the duties and circumstances of the Supervisors at the Jackson Plant.  Based on that analysis, I concluded that the Supervisors were properly classified as exempt from overtime under the FLSA.

17.     Also as part of the investigation, I also consulted Eaton's FLSA Manual.  A true and correct copy of the Eaton's FLSA Manual is attached as Exhibit 2.  The FLSA Manual is an on-line tool to assist human resources managers like me in analyzing and appropriately categorizing employees as exempt or non-exempt from the minimum wage and overtime provisions of the FLSA.  It is also designed to facilitate review of employee classification under the FLSA and ensure company-wide compliance with federal and state law.

18.     On or about April 20, 2011, I met with Mr. Bacon's supervisor, Richard (Clint) Vigus, and Ms. Bridgland to discuss Mr. Bacon's employment concerns, including his concern regarding the classification of Supervisors at the Jackson Plant.

19.     I also had multiple meetings with Mr. Bacon in response to his FLSA and other complaints.  For example, I met with Mr. Bacon on April 21, 2011.  Lesia Jansen, a Jackson Plant human resources employee, also attended the meeting and took notes of the discussion.  During that meeting I specifically reviewed the basis for the conclusion that Supervisors were properly classified as exempt under the FLSA.  I also specifically addressed Mr. Bacon's concerns regarding the Supervisor's central role in the hiring and firing process, including the interplay of the CBA in that process.

20.     At the conclusion of the April 21, 2011 meeting, I assured Mr. Bacon that I would continue to look into his FLSA concerns in light of our discussion.

21.     Following my April 21, 2011 meeting with Mr. Bacon, I had a telephone conference on April 29, 2011 with corporate counsel, Ms. Bridgland, an Eaton employment-practices expert, and Ms. Jansen:   (a) to discuss Mr. Bacon's FLSA concerns and his other complaints; and (b) to ensure that the Jackson Plant was in compliance with federal and state law, including the FLSA.

22.     On April 29, 2011, I met again with Mr. Bacon.  Lesia Jansen also attended this meeting and again took notes of the discussion.  During that meeting, I confirmed for Mr. Bacon that Jackson Plant management considered Supervisors to be properly classified as exempt under the FLSA.

23.     Following Mr. Bacon's notification that he contacted the U.S. Department of Labor and the Michigan Department of Licensing and Regulatory Affairs requesting an investigation of his claims that he and others we improperly classified, I sought additional guidance from corporate counsel regarding Mr. Bacon's claims and his subsequent request for information relating to his claims.

24.     Based on my review of business records, no federal or state agency has ever made a claim or sent a notice to Eaton Aeroquip indicating that Supervisors at the Jackson Plant are improperly classified under FLSA.

25.     My investigation in 2011 was not, however, the first time Eaton Aeroquip reviewed the classification of Supervisors at the Jackson Plant.  Company records and firsthand descriptions reveal that at the time of the acquisition, a team of Eaton employees examined the supervisor positions at the Jackson Plant.   With input from Eaton's human resources professionals and review of counsel, that inquiry concluded with a finding that the positions were exempt from overtime under the FLSA.

26.     As a matter of routine, HR evaluates FLSA compliance on a regular basis, whether or not anyone challenged a classification.

27.     Also as a matter of routine, positions that are classified as exempt are reviewed whenever they are created; whenever a new hire in that position is made; and whenever any similar position is under review.

28.     Review by HR includes, among other things, consulting with the immediate manager to learn the detail of actual job duties for the position, as the work is actually performed.  Employee input is sought if the manager is unable to provide sufficient detail on the actual day-to-day work of the employee.  HR will also consult with legal counsel and corporate compensation experts if there is a concern or question as to appropriate classification of employees.

29.     With respect to review of Plaintiffs' status as exempt, Jackson Plant HR had direct knowledge of Plaintiffs' duties with respect to their authority to hire, fire, promote, and change the rate of pay for the hourly union employees they supervised.  HR was responsible for administrating hourly employee status changes recommended and/or carried out by Plaintiffs during each shift.

30.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 2, 2014.

_____
Nicholas T. Vincent